UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

    -v.-                          :          SUPERSEDING
                                             INDICTMENT
TODD NEWMAN,                       :
ANTHONY CHIASSON, and                        S2 12 Cr. 121 (RJS)
JON HORVATH,                       :

        Defendants.         :

- - - - - - - - - - - - - - - - x

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Entities and Individuals

1.   At all times relevant to this Indictment, TODD NEWMAN, the defendant, was a portfolio manager at a hedge fund located in Stamford, Connecticut ("Hedge Fund A").  At all times relevant to this Indictment, Jesse Tortora ("Tortora"), a coconspirator not named as a defendant herein, was employed as an analyst at Hedge Fund A.

2.   At all times relevant to this Indictment, ANTHONY CHIASSON, the defendant, was one of the founders of, and a portfolio manager at, a hedge fund located in New York, New York ("Hedge Fund B").  At all times relevant to this Indictment, Spyridon Adondakis, a/k/a "Sam Adondakis" ("Adondakis"), a coconspirator not named as a defendant herein, was employed as an analyst at Hedge Fund B.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/28/12

3.   At all times relevant to this Indictment, JON HORVATH, the defendant, was employed as an analyst at a hedge fund located in New York, New York ("Hedge Fund C").

4.   At all times relevant to this Indictment, Dell, Inc. ("Dell"), a public company whose stock was traded on the Nasdaq Stock Market, produced personal computers and provided technology services around the world.  Further, at all times relevant to this Indictment, Dell's policies prohibited the unauthorized disclosure of Dell's confidential information.

5.   At all times relevant to this Indictment, NVIDIA Corporation ("NVIDIA"), a public company whose stock was traded on the Nasdaq Stock Market, produced, among other things, graphics processors.  Further, at all times relevant to this Indictment, NVIDIA's policies prohibited the unauthorized disclosure of NVIDIA's confidential information.

## The Insider Trading Scheme

6.   From at least in or about late 2007 through in or about 2009, JON HORVATH, the defendant, along with Tortora, Adondakis, and others known and unknown, were analysts who worked at hedge funds and investment firms in New York, New York and elsewhere (the "Analyst Coconspirators").  The Analyst Coconspirators exchanged with each other material, nonpublic information ("Inside Information") obtained directly and indirectly from employees of certain publicly traded technology

2

companies ("Technology Companies").  The Analyst Coconspirators, in turn, provided the Inside Information they obtained from each other and from their own sources to the portfolio managers for whom they worked at their respective hedge funds and investment firms (the "Portfolio Manager Coconspirators").  The Portfolio Manager Coconspirators, including TODD NEWMAN and ANTHONY CHIASSON, the defendants, in turn, executed securities transactions based in whole or in part on the Inside Information the Analyst Coconspirators provided to them.

7.    The Inside Information obtained by the Analyst Coconspirators, including JON HORVATH, the defendant, and passed to the Portfolio Manager Coconspirators, including TODD NEWMAN and ANTHONY CHIASSON, the defendants, and to others known and unknown, included information relating to the Technology Companies' earnings, revenues, gross margins, and other confidential and material financial information of the Technology Companies.

8.    The Inside Information obtained by the Analyst Coconspirators, including JON HORVATH, the defendant, and passed to the Portfolio Manager Coconspirators, including TODD NEWMAN and ANTHONY CHIASSON, the defendants, and to others known and unknown was obtained in violation of: (i) fiduciary and other duties of trust and confidence owed by the employees of the Technology Companies to their employers; (ii) expectations of confidentiality held by the Technology Companies; (iii) written policies of the

3

Technology Companies regarding the use and safekeeping of confidential business information; and (iv) agreements between the Technology Companies and their employees to maintain information in confidence.

9.     Specifically, in furtherance of the conspiracy, Tortora passed to TODD NEWMAN, the defendant, Inside Information pertaining to Technology Companies that Tortora had obtained from the Analyst Coconspirators and other sources.  NEWMAN executed and caused others to execute transactions in the securities of certain Technology Companies based in whole or in part on the Inside Information, earning substantial sums in unlawful profits or illegally avoiding losses for the benefit of Hedge Fund A.

10.     In furtherance of the conspiracy, Adondakis passed to ANTHONY CHIASSON, the defendant, Inside Information pertaining to Technology Companies that Adondakis had obtained from the Analyst Coconspirators and other sources.  CHIASSON, either alone or together with one or more coconspirators at Hedge Fund B (the "Hedge Fund B Coconspirators"), executed and caused others to execute transactions in the securities of certain Technology Companies based in whole or in part on the Inside Information, earning substantial sums in unlawful profits or illegally avoiding losses for the benefit of Hedge Fund B.

11.     In furtherance of the conspiracy, JON HORVATH, the defendant, passed the Inside Information he obtained from the

4

Analyst Coconspirators and other sources to the portfolio manager for whom he worked ("Portfolio Manager 1"), who in turn executed and caused others to execute transactions in the securities of certain Technology Companies based in whole or in part on the Inside Information, earning substantial sums in unlawful profits or illegally avoiding losses for the benefit of Hedge Fund C.

### The Dell Inside Information

12.   From in or about 2008 through in or about 2009, in advance of Dell's quarterly earnings announcements, Tortora provided Inside Information regarding Dell's financial condition, including Dell's gross margins (the "Dell Inside Information") to TODD NEWMAN and JON HORVATH, the defendants, and to Adondakis. Tortora obtained the Dell Inside Information from Sandeep Goyal, a/k/a "Sandy Goyal" ("Goyal"), a coconspirator not named as a defendant herein.  Goyal, in turn, obtained the Dell Inside Information from an employee at Dell (the "Dell Insider").

13.   At certain times, the Dell Insider worked in Dell's investor relations department, and had access to confidential financial information concerning Dell's quarterly earnings announcements before it was publicly announced.  The disclosure by the Dell Insider of the Dell Inside Information in advance of Dell's public earnings announcements violated Dell's policies and the Dell Insider's duties of trust and confidence owed to Dell.

14.   Hedge Fund A paid Goyal for information, including the Dell Inside Information, through a purported consulting arrangement with another individual ("Individual 1").   In 2008, Individual 1 received three payments of $18,750 pursuant to this purported consulting arrangement, and a separate $100,000 payment in or about January 2009.   TODD NEWMAN, the defendant, approved this consulting arrangement and the payments to Individual 1 described herein.

May 29, 2008 Earnings Announcement

15.   In advance of Dell's May 29, 2008 quarterly earnings announcement, the Dell Insider provided to Goyal, who, in turn, provided to Tortora, Inside Information concerning Dell's financial results for the quarter ended May 2, 2008.   That Inside Information indicated, among other things, that gross margins would be higher than market expectations.

16.   Tortora passed this Dell Inside Information to TODD NEWMAN, the defendant, in advance of Dell's May 29, 2008 quarterly earnings announcement.   NEWMAN executed or caused to be executed transactions in securities of Dell based in whole or in part on the Dell Inside Information, resulting in an illegal profit for Hedge Fund A of approximately $1 million.

17.   Tortora also provided the Dell Inside Information concerning Dell's May 29, 2008 quarterly earnings announcement to Adondakis.   Adondakis, in turn, provided the Dell Inside

Information to ANTHONY CHIASSON, the defendant, in advance of Dell's May 29, 2008 earnings announcement.  CHIASSON, either alone or together with one or more coconspirators at Hedge Fund B, executed or caused to be executed transactions in securities of Dell based in whole or in part on the Dell Inside Information, resulting in an illegal profit for Hedge Fund B of approximately $4 million.

August 28, 2008 Earnings Announcement

18.   On multiple occasions in advance of Dell's August 28, 2008 quarterly earnings announcement, the Dell Insider provided to Goyal, who, in turn, provided to Tortora, Inside Information concerning Dell's financial results for the quarter ended August 1, 2008.  That Inside Information indicated, among other things, that gross margins would be materially lower than market expectations.

19.   Tortora passed this Dell Inside Information concerning Dell's August 28, 2008 earnings announcement to TODD NEWMAN, the defendant, who executed or caused to be executed transactions in securities of Dell based in whole or in part on the Dell Inside Information, resulting in an illegal profit for Hedge Fund A of approximately $2.8 million.

20.   Tortora also provided the Dell Inside Information concerning Dell's August 28, 2008 quarterly earnings announcement to Adondakis.  Adondakis, in turn, provided the Dell Inside

Information to ANTHONY CHIASSON, the defendant.  CHIASSON, either alone or together with one or more coconspirators at Hedge Fund B, executed or caused to be executed transactions in securities of Dell based in whole or in part on the Dell Inside Information, resulting in an illegal profit for Hedge Fund B of approximately $53 million.

21.   Tortora also provided the Dell Inside Information concerning Dell's August 28, 2008 quarterly earnings announcement to JON HORVATH, the defendant.  HORVATH, in turn, provided the Dell Inside Information to Portfolio Manager 1.  Portfolio Manager 1 executed or caused to be executed transactions in securities of Dell based in whole or in part on the Dell Inside Information, resulting in an illegal profit for Hedge Fund C of approximately $1 million.

### The NVIDIA Inside Information

22.   At all times relevant to this Indictment, Danny Kuo, an Analyst Coconspirator not named as a defendant herein, was employed as an analyst at a wealth management company headquartered in Pasadena, California ("Investment Firm D").  In or about 2009, Kuo obtained Inside Information regarding NVIDIA's financial results, including NVIDIA's revenues and gross margins (the "NVIDIA Inside Information"), in advance of NVIDIA's quarterly earnings announcements.  Kuo obtained the NVIDIA Inside Information from a friend ("Individual 2") who in turn obtained

the NVIDIA Inside Information from an employee at NVIDIA (the
"NVIDIA Insider").  Kuo paid Individual 2 cash and other items of
value in exchange for the NVIDIA Inside Information.  Kuo passed
this NVIDIA Inside Information to the portfolio manager at
Investment Firm D for whom he worked ("Portfolio Manager 2") as
well as to Tortora, Adondakis, and JON HORVATH, the defendant.

23.   At certain times, the NVIDIA Insider worked in
NVIDIA's finance department, and had access to confidential
financial information concerning NVIDIA's quarterly earnings
announcements before the information was publicly announced.  The
disclosure by the NVIDIA Insider of the NVIDIA Inside Information
in advance of NVIDIA's public earnings announcements violated
NVIDIA's policies and the NVIDIA Insider's duties of trust and
confidence owed to NVIDIA.

May 7, 2009 Earnings Announcement

24.   In advance of NVIDIA's May 7, 2009 quarterly
earnings announcement, the NVIDIA Insider provided to Individual
2, who in turn provided to Kuo, Inside Information concerning
NVIDIA's financial results for the quarter ended April 26, 2009.
That Inside Information indicated, among other things, that gross
margins would be lower than market expectations.  Kuo provided
this NVIDIA Inside Information to Portfolio Manager 2 as well as
to Tortora, Adondakis, and JON HORVATH, the defendant.

25.   Tortora, in turn, provided the NVIDIA Inside

Information to TODD NEWMAN, the defendant.   NEWMAN executed or caused to be executed transactions in securities of NVIDIA in advance of NVIDIA's May 7, 2009 quarterly earnings announcement based in whole or in part on the NVIDIA Inside Information, resulting in an illegal profit for Hedge Fund A of at least $48,000.

26.   Adondakis, in turn, provided the NVIDIA Inside Information to ANTHONY CHIASSON, the defendant.   CHIASSON executed or caused to be executed transactions in securities of NVIDIA in advance of NVIDIA's May 7, 2009 quarterly earnings announcement based in whole or in part on the NVIDIA Inside Information, resulting in an illegal profit for Hedge Fund B of approximately $10 million.

27.   JON HORVATH, the defendant, in turn provided the NVIDIA Inside Information to Portfolio Manager 1.   Portfolio Manager 1 executed or caused to be executed transactions in securities of NVIDIA in advance of NVIDIA's May 7, 2009 quarterly earnings announcement based in whole or in part on the NVIDIA Inside Information, resulting in an illegal profit for Hedge Fund C of over $400,000.

### The Conspiracy

28.   From in or about late 2007 through in or about 2009, in the Southern District of New York and elsewhere, TODD NEWMAN, ANTHONY CHIASSON, and JON HORVATH, the defendants, and

10

others known and unknown, willfully and knowingly did combine,
conspire, confederate and agree together and with each other to
commit an offense against the United States, to wit, securities
fraud, in violation of Title 15, United States Code, Section
78j(b) and 78ff, and Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 240.10b5-2.

## Object of the Conspiracy

### Securities Fraud

29.  It was a part and an object of the conspiracy that
TODD NEWMAN, ANTHONY CHIASSON, and JON HORVATH, the defendants,
and others known and unknown, willfully and knowingly, directly
and indirectly, by the use of the means and instrumentalities of
interstate commerce, and of the mails, and of the facilities of
national securities exchanges, would and did use and employ, in
connection with the purchase and sale of securities, manipulative
and deceptive devices and contrivances in violation of Title 17,
Code of Federal Regulations, Section 240.10b-5 by: (a) employing
devices, schemes and artifices to defraud; (b) making untrue
statements of material fact and omitting to state material facts
necessary in order to make the statements made, in the light of
the circumstances under which they were made, not misleading; and
(c) engaging in acts, practices and courses of business which
operated and would operate as a fraud and deceit upon any person,
all in violation of Title 15, United States Code, Sections 78j(b)

and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

## Means and Methods of the Conspiracy

30. Among the means and methods by which TODD NEWMAN, ANTHONY CHIASSON, and JON HORVATH, the defendants, and others known and unknown, would and did carry out the conspiracy were the following:

a.   The Analyst Coconspirators, including HORVATH, obtained Inside Information directly and indirectly from employees of public companies that had been disclosed by those employees in violation of fiduciary and other duties of trust and confidence that they owed to their employers.

b.   The Analyst Coconspirators, including HORVATH, shared with each other Inside Information that they obtained directly or indirectly from public company employees.

c.   The Analyst Coconspirators, including HORVATH, also provided the Inside Information they obtained directly or indirectly from public companies or from each other to their respective portfolio managers for the purpose of the portfolio managers' trading on that Inside Information.  Thus, HORVATH provided the Inside Information that he obtained from both the Analyst Coconspirators and other sources to Portfolio Manager 1, Tortora provided the Inside Information that he obtained from both

the Analyst Coconspirators and other sources to NEWMAN, and
Adondakis provided the Inside Information that he obtained from
both the Analyst Coconspirators and other sources to CHIASSON.

       d.    NEWMAN executed and caused others to execute
securities transactions for the benefit of Hedge Fund A in various
Technology Companies based in whole or in part on the Inside
Information provided by Tortora, knowing that the Inside
Information had been disclosed by public company employees in
violation of duties of trust and confidence owed to their
employers.

       e.    CHIASSON, either alone or together with one or
more coconspirators at Hedge Fund B, executed and caused others to
execute securities transactions for the benefit of Hedge Fund B in
various Technology Companies based in whole or in part on the
Inside Information provided by Adondakis, knowing that the Inside
Information had been disclosed by public company employees in
violation of duties of trust and confidence owed to their
employers.

## Overt Acts

       31.   In furtherance of the conspiracy, and to effect the
illegal object thereof, TODD NEWMAN, ANTHONY CHIASSON, and JON
HORVATH, the defendants, and their coconspirators committed the
following overt acts, among others, in the Southern District of
New York and elsewhere:

13

a.   On or about May 12, 2008, Adondakis called CHIASSON's office telephone line in New York, New York.

b.   On or about May 16, 2008, Tortora and NEWMAN spoke by telephone.

c.   On or about August 5, 2008, Tortora sent emails to NEWMAN, HORVATH, Kuo, and Adondakis containing certain of the Dell Inside Information.

d.   On or about August 8, 2008, Adondakis discussed certain of the Dell Inside Information with CHIASSON in an office located in New York, New York.

e.   On or about August 18, 2008, Tortora spoke with HORVATH by telephone.

f.   On or about August 18, 2008, Tortora spoke to Kuo by telephone.

g.   On or about August 25, 2008, HORVATH sent an email to Portfolio Manager 1 containing certain of the Dell Inside Information.

h.   On or about August 27, 2008, CHIASSON participated in a telephone call routed through Hedge Fund B's office in New York, New York, with Adondakis and other coconspirators at Hedge Fund B in which certain of the Dell Inside Information was discussed.

14

i.    On or about February 10, 2009, Kuo sent emails to Portfolio Manager 2, as well as to HORVATH, Tortora, and Adondakis containing Inside Information concerning NVIDIA.

j.    On or about May 4, 2009, Kuo sent emails to Portfolio Manager 2, as well as to HORVATH, Tortora, and Adondakis containing Inside Information concerning NVIDIA.

k.    On or about August 6, 2009, Kuo sent emails to Portfolio Manager 2, as well as to HORVATH, Tortora, and Adondakis, containing Inside Information concerning NVIDIA.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH FIVE

(Securities Fraud)

The Grand Jury further charges:

32.  The allegations contained in paragraphs 1 through 27 and 30 through 31 are repeated and realleged as though fully set forth herein.

33.  On or about the dates set forth below, in the Southern District of New York and elsewhere, TODD NEWMAN, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal

15

Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, NEWMAN executed and caused others to execute the securities transactions listed below based in whole or in part on material, nonpublic information:

| COUNT | DATE | SECURITY | TRANSACTION |
|---|---|---|---|
| TWO | May 16, 2008 | Dell, Inc. | purchase of 475,000 shares of common stock |
| THREE | August 5, 2008 | Dell, Inc. | short sale of 180,000 shares of common stock |
| FOUR | August 15, 2008 | Dell, Inc. | short sale of 350,000 shares of common stock |
| FIVE | April 27, 2009 | NVIDIA Corporation | short sale of 375,000 shares of common stock |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5
and 240.10b5-2; and Title 18, United States Code, Section 2.)

## COUNTS SIX THROUGH TEN

(Securities Fraud)

The Grand Jury further charges:

34.   The allegations contained in paragraphs 1 through 27 and 30 through 31 are repeated and realleged as though fully set forth herein.

16

35.   On or about the dates set forth below, in the Southern District of New York and elsewhere, ANTHONY CHIASSON, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, CHIASSON executed and caused others to execute the securities transactions listed below based in whole or in part on material, nonpublic information:

| COUNT | DATE | SECURITY | TRANSACTION |
|-------|------|----------|-------------|
| SIX | May 12, 2008 | Dell, Inc. | purchase of 3,500 call option contracts |
| SEVEN | August 11, 2008 | Dell, Inc. | short sale of 100,000 shares of common stock |
| EIGHT | August 18, 2008 | Dell, Inc. | short sale of 700,000 shares of common stock |
| NINE | August 20, 2008 | Dell, Inc. | purchase of 7,000 put option contracts |
| TEN | May 4, 2009 | NVIDIA Corporation | short sale of 1,000,000 shares of common stock |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5
and 240.10b5-2;and Title 18, United States Code, Section 2.)

## COUNTS ELEVEN AND TWELVE

(Securities Fraud)

The Grand Jury further charges:

36.   The allegations contained in paragraphs 1 through 27 and 30 through 31 are repeated and realleged as though fully set forth herein.

37.   On or about the date set forth below, in the Southern District of New York and elsewhere, JON HORVATH, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal

18

Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, HORVATH provided material, nonpublic information to Portfolio Manager 1, who executed or caused others to execute the securities transactions listed below based in whole or in part on the information:

| COUNT | DATE | SECURITY | TRANSACTION |
| --- | --- | --- | --- |
| ELEVEN | August 18, 2008 | Dell, Inc. | short sale of at least 167,000 shares of common stock |
| TWELVE | May 5, 2009 | NVIDIA Corporation | a swap transaction equivalent to a short sale of 160,000 shares of common stock |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5
and 240.10b5-2; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

38. As a result of committing one or more of the foregoing securities fraud offenses alleged in Counts One through Twelve of this Indictment, TODD NEWMAN, ANTHONY CHIASSON, and JON HORVATH, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses.

### Substitute Assets Provision

39.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461; Title 18, United States Code, Sections 371 and 2; Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

**TODD NEWMAN,**
**ANTHONY CHIASSON, and**
**JON HORVATH,**

Defendants.

### SUPERSEDING
### INDICTMENT

**S2 12 Cr. 121 (RJS)**

(18 U.S.C. §§ 2, 371; Title 15, United
States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 240.10b5-2)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

*8/28/12 - Filed Superseding Indictment.*
*/s*

*Jn dye Peel*
*Us MQ*